390 So.2d 891 (1980)
Preston DAVIS
v.
A COPELAND ENTERPRISES, INC. and Liberty Mutual Insurance Company et al.
No. 67598.
Supreme Court of Louisiana.
November 10, 1980.
*892 Patrick M. Reily, New Orleans, for plaintiff-applicant.
Donald O. Collins, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendants-respondents.
LANDRY, Justice ad hoc.
On application of Plaintiff, Preston Davis, an employee of Refrigeration Equipment Company (Refrigeration), writs were granted herein to review the judgment of the trial and appellate court dismissing plaintiff's tort action against defendant, A Copeland Enterprises, Inc. (Copeland) and Copeland's insurer Liberty Mutual Insurance Company (Liberty). Plaintiff sues for injuries sustained accidentally while performing repairs to the refrigeration system of a cold storage warehouse leased by Copeland from Robert F. Morrow. The trial court sustained Copeland's motion for summary judgment and the appellate court affirmed. We reverse.
In June, 1975, while acting during the course and within the scope of his employment by Refrigeration, plaintiff was recharging the ammonia refrigeration system in the warehouse Copeland had under lease from Morrow. While so engaged a hex bushing broke. Plaintiff was sprayed with ammonia and suffered serious burns. In August, 1975, plaintiff brought suit against Copeland, Liberty, Morrow and Morrow's insurer seeking recovery for his injuries.
In September, 1978, Copeland and Liberty filed a motion for summary judgment dismissing the action as to them on the ground that Copeland is a principal or statutory employer of plaintiff pursuant to LSA-R.S. 23:1032 and LSA-R.S. 23:1061 and as such liable to plaintiff for Workmen's Compensation Benefits only.
The motion for summary judgment is predicated on the ground that Copeland operates cold storage warehouses as part of its business as owner and franchisor of the enterprise known as Popeye's Fried Chicken. An integral part of the business is said to be furnishing food products to franchisee's as well as Copeland's wholly owned corporate outlets. It is further contended that in furnishing such products Copeland must maintain cold storage warehouses and the refrigeration machinery and equipment required in the operation of such facilities, which maintenance is regularly and customarily contracted to third parties.
The motion for summary judgment was supported by affidavit of D. M. Kimball. The affidavit, dated August 31, 1978, recites:
"He is the Vice President of Purchasing of A. Copeland, Inc., and he is well and *893 truly familiar with its business operations. He is aware of the fact that A. Copeland Enterprise, Inc., did lease a warehouse at 3601 Lousaps Street, Metairie, Louisiana, from Robert F. Morrow and did secure the services of Weston G. Strauch to service the ammonia refrigeration system located therein. That A. Copeland Enterprises, Inc., in its business as a franchisor of fast food restaurants, a/k/a Popeye's Fried Chicken (sic) and must specifically maintain refrigeration equipment in warehouses sufficient to store the necessary food items required to supply its own corporately owned stores, as well as those owned by franchiseee (sic). That in the operation of A. Copeland Enterprises, Inc's business it is the normal and usual thing to contract with an outside contractor to perform the necessary maintenance and repair work on the refrigeration equipment used by it in its warehouse operations."
Plaintiff did not offer a counter affidavit. The record however contains a copy of Morrow's lease to Copeland which Morrow attached to his answer to interrogatories propounded by plaintiff. The record also contains Morrow's affidavit in support of his motion for summary judgment. Morrow's affidavit recites that at no time prior to the accident was he informed of any defect in the refrigeration equipment; that he never personally or for his own account activated or operated the refrigeration equipment in question; and that he had leased the premises to Copeland as evidenced by the attached lease agreement.
Copeland's lease is for a period of one year commencing June 15, 1975, with renewal privileges. The accident occurred June 19, 1975. The lease recites that the subject premises are leased for use as a cold storage warehouse. Copeland as lessee is obligated to maintain and repair all elevators, lifts and machinery on the premises and carry stipulated insurance coverage. The lease recites that Copeland inspected the premises prior to signing and is satisfied with the condition of the premises including the refrigeration equipment and machinery.
As authorized by LSA-R.S. 9:3221, the lease states:
"Lessee assumes responsibility for the condition of the premises and Lessor will not be responsible for damage caused by leaks in the roof, by bursting pipes, by freezing or otherwise, or by any vices or defects of the leased property, or consequences there of, except in the case of positive neglect or failure to take action toward the remedying of such defects within reasonable time after having received written notice from Lessee of such defects and the damage caused thereby. Should Lessee fail to promptly so notify Lessor in writing of any such defects, Lessee will become responsible for any damage resulting to Lessor or other parties."
The foregoing lease provision effectively releases Morrow, as owner of the leased premises, from legal liability for the condition of the premises and from liability for injuries caused by defects therein to the lessee Copeland or anyone on the premises who derives from Copeland his right to be thereon, unless Morrow knew or should have known of the defect or had received notice thereof and failed to remedy the defect within a reasonable time.
On October 13, 1978, the trial court rejected Copeland's motion for summary judgment. The case was transferred to another division of the trial court and on April 10, 1979, Copeland again moved for summary judgment on the strength of Kimball's affidavit of August 31, 1978. The trial court granted the motion. On appeal, a three judge panel, with one judge dissenting, affirmed.
Plaintiff concedes that pursuant to LSA-R.S. 23:1032 and 1061, Copeland must be deemed a principal or statutory employer if Copeland was in fact engaged in maintaining cold storage warehouses as part of its business at the time of subject accident and Copeland contracted for such maintenance as a usual and normal part of its business venture.
Plaintiff argues, however, that whereas his rights are limited to recovery of compensation *894 benefits against a principal or statutory employer, LSA-R.S. 23:1101 reserves his right to recover from a third party responsible for his injuries. This third party liability, according to plaintiff is not limited to actions in tort but includes any legal liability of such a third party, even the strict liability or liability without fault imposed by LSA-C.C. Articles 670[1] and 2322[2] upon an owner for the things under his control or the condition of his premises.
It is plaintiff's contention that in assuming the strict liability imposed by Articles 670 and 2322, above, Copeland in effect appears in a dual capacity. The first is that of principal or statutory employer if Copeland does in fact meet the test of LSA-R.S. 23:1061. Copeland's alleged second capacity is that of one who has contractually assumed the strict liability of a third party otherwise liable for plaintiff's injuries but released therefrom because of Copeland's assumption thereof. Plaintiff argues that Copeland and Morrow cannot contract to defeat or negate Morrow's liability to plaintiff, at least not without Copeland becoming liable in Morrow's stead. Any other result, according to plaintiff would effect an unconscionable and unconstitutional deprivation of plaintiff's rights against Morrow pursuant to LSA-C.C. Articles 670 and 2322, above. Therefore, according to plaintiff, summary judgment may not lie herein because plaintiff, in effect, has a claim against Copeland who stands in Morrow's place.
A motion for summary judgment may be granted only when the pleadings, depositions on file, answers to interrogatories and affidavits, if any, show the absence of dispute as to a genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Article 966; Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
In a summary judgment proceeding the burden of showing absence of dispute as to a genuine issue of material fact and that mover is entitled to judgment as a matter of law, is incumbent upon mover. Any doubt concerning whether or not summary judgment should be granted must be resolved against mover and in favor of trial on the merits. Chaisson v. Domingue, above.
Plaintiff contends that Copeland's affidavit is defective as to form in that it is not made on personal knowledge and merely states that Kimball is "aware" of certain facts. Plaintiff also contends the affidavit is substantively deficient in that it was made three years after the accident and fails to allege Kimball's connection with Copeland in 1975, if any, and also fails to specifically allege the nature of Copeland's business when the accident occurred.
Copeland stresses plaintiff's failure to file a counter affidavit and cites LSA-C.C.P. Article 967 in support of the rule that when a motion for summary judgment is supported by affidavit the adverse party may not rely on the pleadings and denials therein but must respond by counter affidavit.
Copeland also argues that absent a motion to strike, the fact that an affidavit is not made on personal knowledge is a formal defect deemed waived. Barnes v. Sun Oil Company, 362 So.2d 761 (La.1978). We agree but, nevertheless a motion for summary judgment may be granted only when the pleadings, affidavits and interrogatories show absence of a dispute as to a genuine issue of material fact and that mover is entitled to judgment as a matter of law. LSA-C.C.P. Article 966, above.
*895 Copeland maintains that as a matter of law it may not be held liable to plaintiff under its assumption of Morrow's ownership liability. It is suggested that Morrow is in the business of leasing warehouses and repairing and maintaining equipment therein. Consequently, Morrow's liability to plaintiff, if any, would be that of principal or statutory employer.
We deem Kimball's affidavit inadequate in that it does not specify with certainty either the nature of Kimball's connection with Copeland at the time of the accident or the precise nature of Copeland's business at that crucial time. It does not sufficiently reflect facts which would constitute Copeland as a principal or statutory employer at the time of the accident.
Additionally, this case poses the novel, intricate and unresolved issue of whether the limitative effects of LSA-R.S. 23:1032 and 1061 shields a statutory employer or principal from contractually assumed liability of a third party otherwise strictly liable to an injured employee. We believe this issue to be of far reaching consequences; so much so that it should be decided only upon a full hearing. We, of course, express no opinion at this time as to how the issue should be resolved.
We find no merit in Copeland's claim that plaintiff is limited to recovery of workmen's compensation benefits from Morrow because Morrow's business is leasing warehouses and maintaining and repairing equipment therein. The record falls far short of showing this to be an undisputed fact. We note, only in passing that Morrow's affidavit appears to refute this position.
The judgment of the trial court and court of appeal are reversed and set aside, the motion for summary judgment is denied and dismissed and this matter remanded to the trial court for further proceedings consistent with the views herein expressed; all costs incident to this writ to be paid by Copeland and Liberty.
Reversed and remanded.
DIXON, C. J., and MARCUS, J., concur.
NOTES
[1] LSA-C.C. Article 670. Keeping buildings in repair.

Everyone is bound to keep his buildings in repair, so that neither their fall, nor that of any of the materials composing them, may injure the neighbors or passengers, under the penalty of all losses and damages, which may result from the neglect of the owner in that respect.
[2] LSA-C.C. Article 2322. Damage caused by ruin of building.

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.