SAUNDERS, Judge.
This is an appeal from the grant of a summary judgment in favor of plaintiff-ap-pellee, Port Aggregates, Inc., and against defendant-appellant, Woodrow Wilson Construction Company, Inc. (hereinafter re *664 ferred to as Woodrow Wilson) and the Fidelity and Deposit Company of Maryland.

FACTS

In May of 1991, plaintiff, Port Aggregates, Inc., filed suit against Woodrow Wilson, general contractor, and its surety, Fidelity' and Deposit Company of Maryland, defendants herein, to collect for materials and supplies delivered by plaintiff to a public works project pursuant to an agreement with KHM General Contractors, Inc. (hereinafter KHM), a subcontractor of defendant, Woodrow Wilson.
After Woodrow Wilson filed an answer in July of 1991, Port Aggregates, Inc. moved for summary judgment in June of 1992, contending that there remained no genuine issue of material fact and that it was entitled to judgment as a matter of law.
In support of its motion for summary judgment, Port Aggregates, Inc. attached the affidavit of Kenneth Hebert, president of KHM General Contractors, Inc., who attested to the fact that KHM was the subcontractor on the public works project known as the Medium Security Prison Project. He stated that KHM entered into a contract with Port Aggregates, Inc. for the delivery of materials to said project. He stated that Port Aggregates delivered material worth $32,285.05 with the last material being delivered by plaintiff on May 25, 1990. Finally, he attested to the fact that the materials furnished were used in the project and that none of the amounts owed had been paid by or on behalf of KHM.
Also attached to Port Aggregates’ motion for summary judgment was the affidavit of Andrew Lee Guinn, president of Port Aggregates, Inc., who attested that the defendant, Woodrow Wilson, was the general contractor on the project. Guinn stated that Port Aggregates, Inc. supplied material to the Medium Security Prison Project pursuant to a contract between plaintiff and KHM. This same affidavit stated that the unpaid balance on the material supplied was $32,285.05.
In opposition to plaintiffs motion for summary judgment, Woodrow Wilson filed the affidavit of its vice-president in charge of the construction project, Mark A. Wilson, who questioned whether Port Aggregates had delivered the supplies to the defendant. Wilson stated that he had personally observed and supervised the project in 1989 and 1990 during construction, including the work which was performed by KHM. He stated that he did not observe any delivery of materials by Port Aggregates, Inc. to his job site. Further, he stated that he did not observe the incorporation of any materials of Port Aggregates into the construction project.
Wilson noted that KHM, the subcontractor, was involved in several projects in the same area as the one at issue, stating that “[i]n addition, there was under construction at the same time of this project a detention center near the city of Kinder, Louisiana, which was a separate project from the Allen Parish Medium Security Prison project.” Wilson then listed the delivery ticket numbers at issue, noting that they either had insufficient or no indication of the address and/or parish where the materials were delivered. He also noted that he did not recognize the signatures of anyone who signed the delivery tickets on behalf of Woodrow Wilson or any subcontractor for the materials delivered, even though it was a requirement of Woodrow Wilson that someone sign for any materials delivered to the job site. Finally, Wilson then denied that such materials were delivered to or incorporated into the construction project at issue.
Attached to Wilson’s affidavit were copies of delivery tickets and invoices. We note that none of these tickets state that they were delivered to the “Medium Security Prison Project.” The first invoice # 11059 stated that the materials were delivered to the “Alien Detention Center” as do the corresponding delivery tickets # 71106, 71101 and 71104, which are dated May 25, 1990. The remainder of the invoices and delivery tickets note that the materials were shipped to a project in Kinder. The signatories on the delivery tickets remain unidentified.
Additionally, in opposition to Port Aggregates’ motion for summary judgment, Woodrow Wilson filed the deposition of Larry Pittman taken March 25,1992. Pittman was the superintendent of construction and the pro- *665 jeet manager for the Medium Security Prison Project’s general contractor, Woodrow Wilson.
Pittman stated that KHM was the dirt and site work contractor for the project and supplied the project with limestones for roads, sidewalks, etc., during the latter part of the job. Weekly meetings were held with KHM which Pittman stated were a problem because KHM would not attend regularly. Kenneth Hebert, one of KHM’s two owners, would attend these weekly meetings and Pittman stated that Hebert should have been in a position to know whether materials were being delivered by Port Aggregates. Pith-man stated that toward the end of the job, KHM expressed problems getting any more material from Port Aggregates, Inc. because KHM could not pay their bill. He and Hebert discussed the fact that the project was short on limestone and Hebert told Pittman that KHM was out of funds. Woodrow Wilson then had to buy several truckloads of limestone to complete the project. He did not remember where Woodrow Wilson had purchased this extra limestone.
Pittman also attested in his affidavit that he did not review the daily delivery tickets that KHM would receive for the limestone and would defer to KHM as to whether the material was actually received. He remembered deliveries of materials at the job site but did not remember who made the deliveries. He was aware that limestone was delivered to the project and to his knowledge, everything that was delivered to the site was incorporated into the site. He stated that when the limestone was first brought to the job site, it was stockpiled by KHM in a staging area outside of the job site. From there, it was loaded on KHM’s trucks and distributed throughout the site. He had no knowledge of it being used anywhere else but on this project.
When asked regarding any complaints with KHM, he stated that KHM had walked off the job at the end of the project and Woodrow Wilson had to finish KHM’s part of the job, including the purchase of limestone. He stated that KHM was “one of the subcontractors that I had to spend most of my time to get moving.” Although KHM was contacted in writing about work left undone on the “punch list” at the end of the project, they left Woodrow Wilson to complete their “punch list.” When KHM left the project, there remained $800,000 to $400,000 of work which had to be completed by Woodrow Wilson.

ASSIGNMENT OF ERROR

The sole issue before this court as to the grant of summary judgment is whether the trial court erred in finding that the pleadings, depositions and affidavits submitted disclosed no genuine issue as to a material fact and therefore, entitled Port Aggregates, Inc. to judgment as - a matter of law.

LAW

The jurisprudence regarding motions for summary judgment is set out clearly in Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068,1070-71 (La.App.3d Cir.1985), as follows:
“La.C.C.P. Arts. 966 and 967 contain the statutory provisions for summary judgment.
Article 966 provides in part:
‘A. The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiffs motion may be made at any time after the answer has been filed. The defendant’s motion may be made at any time.
B. The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.’
Article 967 provides in pertinent part:
*666 ‘Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
⅜ ⅜ ⅜ ⅜ * ⅝
Once a motion for summary judgment has been made and supported, a party opposing the motion may not rest on the mere allegations of his pleadings but must set forth by way of affidavit or other receivable evidence specific facts showing a genuine issue for trial or else summary judgment will be rendered against him. La.C.C.P. Art. 967. Welch v. Daigrepont, 378 So.2d 607 (La.App.3rd Cir.1979).
* * * * ⅜ *
‘The party seeking summary judgment has the burden of showing the complete absence of a genuine issue of material fact. All doubts will be decided in favor of a trial on the merits and no summary judgment will be granted even if the trial court has grave doubts regarding a party’s ability to establish disputed facts. City of Baton Rouge v. Cannon, 376 So.2d 994 (La.App. 1st Cir.1979).
To determine whether there is a genuine issue of fact, a trial court must of necessity examine the merits. Despite the presence of disputed facts, summary judgment as a matter of law will be granted if the disputed issues of fact are so patently insubstantial as to present no genuine issues. Merely formal allegations without substance will not preclude summary judgment. City of Baton Rouge v. Cannon, supra; Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179 (La.App.4th Cir. 1972), writ refused 261 La. 462, 259 So.2d 914 (1972).’
Aydell v. Charles Carter & Company, Inc., 388 So.2d 404 (La.App.lst Cir.1980), writ denied, 391 So.2d 460 (La.1980).”

DISCUSSION

Woodrow Wilson contends that material issues of fact remain to be resolved in this case, specifically whether the materials were actually delivered to this project or to other projects upon which KHM was working at the time of the project at issue.
After our review of the record, we find that there remain genuine issues of material fact to be resolved at trial. Woodrow Wilson, through the affidavit of Mark Wilson, factually disputes whether the invoices and delivery tickets are representative of deliveries made to the Medium Security Prison Project at issue. We have noted above that several of the tickets appear to represent supplies delivered to the “Alien Detention Center,” a completely different construction project than the Medium Security Prison project at issue herein, as alleged in Wilson’s affidavit.
Mr. Wilson additionally contends that no one with Woodrow Wilson signed for the materials delivered despite such a requirement. No counter-affidavit or other evidence was filed by Port Aggregates, Inc. to identify the signatories on the delivery tickets. Therefore, there remains an issue of material fact as to who actually received delivery of the materials supplied by Port Aggregates, Inc.
As stated above, all doubts will be decided in favor of a trial on the merits and summary judgment should not be granted, even if the court has doubts regarding a party’s ability to establish disputed facts. In the case at bar, we do not find that the disputed issues of fact are so “patently insubstantial” as to present no genuine issues. See Equipment, Inc. v. Anderson Petroleum, Inc., supra. Therefore, we hold that the trial court erred in granting plaintiffs motion for summary judgment.

CONCLUSION

For the foregoing reasons, the summary judgment in favor of Port Aggregates, Inc. is *667 reversed. This matter is remanded to the trial court for proceedings consistent with this opinion.
Ail costs at trial and on appeal to be assessed against plaintiff-appellees, Port Aggregates, Inc.
REVERSED AND REMANDED.